## No. 25.

### WIDOW MARGARET LACY *v.* NICHOLAS FERGUSON.

Where decedent left nothing of value and was buried by defendant heir at his own expense, the heir will not be held liable for her debts merely because her paltry belongings were taken to his house, where it is not shown that he had disposed of the belongings; that the creditors were in any way injured; or that he was seeking his own financial advantage.

*Appealed from Fifth District Court, Parish of Orleans.*

*C. H. Lavilleburvre,* attorney for plaintiff, appellee.

*Kennedy & Chiapella,* attorneys for defendant, appellant.

His Honor Judge Walter H. Rogers, rendered the opinion and decree of the court in the words and figures following, to wit;

The plaintiff alleges that she was a creditor of Catherine Cavanaugh, who died in the city in October 1873; it is claimed that the defendant, Nicholas Ferguson, was at the time of the decease her nearest living relative; that as soon as Mrs. Cavanaugh's death became known he proceeded wrongfully and unlawfully to remove her effects and dispose of the same for his own use and benefit; that he accepted unconditionally the succession of his dead sister by appropriating all the property

and effects of which the same was composed; that he cautiously intermeddled in the succession and rendered himself personally liable for the debts of the deceased.

It is very evident that this action does not arise under section 3685, Revised Statutes, or Civil Code Article 1100—; which applied to strangers not heirs—the liability if any in this case arises under other provisions of our Code.

Without discussing the verity of plaintiff's claim against the deceased Catherine Cavanaugh the facts in the record show—; that she was a woman quite without means, until aided by plaintiff, who appears to have been a hired servant—; that Mrs. Cavanaugh had opened a small grocery on the corner of Canal and Marais Street—; the establishment consisted of a store in the front and a small partition room in the rear which was used as a bed room—; according to all the witnesses the room was miserably furnished—One of plaintiff's witnesses testifying to the removal of effects says—One man carried the bed, while another carried the trunk.

It appears that on Saturday, the 4th of October, the constable of a justice's court had, according to his statement, sold out everything in the store—; the son of plaintiff intimates in his testimony that Mrs. Cavanaugh, in collusion with the constable's keeper, concealed some valuable articles in a trunk in the room—; this, however, we cannot consider, the statements are entirely too indefinite to substantiate so grave an offense against an officer of the law.

The night of the day following the sale (Sunday) Mrs. Cavanaugh died—but her death was not known until the following day when the police and the coroner were notified—word was sent to her brother, the defendant, who, according to his own statement and that of the police, was not permitted to enter the house until the arrival of the coroner—that officer having ascertained that death resulted from congestion of the brain, turned over the body to defendant for burial. It appears that what effects were left in this house were taken to the house of defendant and left on the banquette and in his stable, whether by his orders or not is not clear—; we are satisfied

however that they were without any appreciable value. The amount of the debt claimed is $600.00 with interest from September 1873, and for this sum the District Judge gave plaintiff a judgment. Before considering the law applicable to this it is proper to state that the deceased was, as is shown by the testimony, insolvent, and that there survived her as heirs, besides the defendant, a mother and three sisters. Article 999 (993) Civil Code, which holds a person responsible for having disposed of property of a succession without the authorization of the judge is founded upon the reason of the articles preceding—assuming that the heir has failed to cause an inventory to be taken—that he has not renounced the succession—that he has assumed the quality of heir in an unqualified manner—that he has done some act which supposes his intention to accept and which he would have no right to do but in his quality of heir—Civil Code 988.

It is necessary that the intention should be united to the fact—or rather manifested by the fact—in order that the acceptance be inferred, Civil Code 990. Various acts may indicate that intention, and there may sometimes be an actuating intermeddlery with the property of a succession, and yet the person not be liable as heir. On the other hand there are some acts which are foreign to a succession and yet manifest a will to accept—Civil Code 989;—19 La. 506; 15 Ann. 170.

Without now considering other provisions of law creating exceptions under these articles and affecting acts which may be differently interpreted according to time and circumstances, it will be observed that the Code passes from the consideration of these general principles to rules of action against the heir—Articles which we have quoted above, must be considered in connection with the article 1422, etc. The personal action which the creditors of a succession can exercise against the heirs, has for its basis the obligation, which the heirs are under, to discharge the debt of the deceased. This action is modified according as the deceased has left one or several heirs—Article 1422 Civil Code. But though the heirs and other universal successors, who have not made an inventory

as before prescribed are bound for the payment of all the debts of the succession to which they are called, even when the debts exceed the value of the property left them, they are not bound *in solido* and one for the other, for the payment of the debt—Civil Code 1425. When deceased has left one sole heir, this heir is bound for the payment of the whole debt and may be sued strictly and personally as such—Civil Code 1426. If, on the contrary, deceased has left two or more heirs, they are bound to contribute to the payment of those debts, only in proportion to the part which each has in the succession. Thus the creditors of the succession must divide among the heirs the personal action which they have against them and cannot sue one for the portion of the other, or one for the whole debt—Civil Code 1427.

In the same manner article 120 C.P. provides that where one against whom there was a cause of action dies leaving two or more heirs, the party may proceed against each of them for the share of what he inherits if that share be sufficiently known and ascertained, otherwise they can only be sued, for a virile portion, that is to say for an equal part of the debt, dividing it into as many parts as there are heirs.

Article 40 C.P. declares that the heirs shall only be responsible for the amount and portion which each has inherited from the debtor's estate.

In 6 La. 17, it appears that Theodore Mudd sued the heirs of Madam Stille who were condemned jointly and severally for the debt of their ancestor—says the court—we have most postive legislative provisions in our code that heirs are liable only for the part that they have in the succession and this is the case even where they have made no inventory—and the same decision was made in 2 Ann. 806.

It is manifest therefore that the judgment condemning the defendant for the entire debt is erroneous. The authority cited by plaintiff shows as far as we can perceive, that there was but the surviving heir who was sued—particularly the case of Stephenson vs. Wilson 7 Ann. 554. Our understanding of the facts in this case already intimated, shows that Mrs.

Cavanaugh left nothing of value—that she was buried by the defendant, at his own expense and we now add that there is no evidence to show that he ever disposed of the effects taken to his house—Nor does it appear that the plaintiff was in any manner injured—Laws must be interpreted and applied reasonably—and we should view the action of our fellow men just as reasonably—; that it was physically impossible to remove such goods as plaintiff says was in the store, in the manner testified to by her witnesses, there can be no doubt—while it is quite certain that the testimony of the coroner, the police, the constable and the undertaker as to what was in the premises is conclusive. Under such a condition of facts are we to consider that the defendant was seeking his own pecuniary advantage in fraud of worthy creditors by appropriating to his own use trash—not enough to pay the expense of the funeral.

An act of pity or humanity towards one's relations is not considered an acceptance; it is not therefore an acceptance to take care of the burial of the deceased, or to pay the funeral expenses even without protestation. Civil Code 1001.

That the law has justly provided for the payment of obligations due by a deceased out of his estate, and that no one shall without legal authority, take, enjoy and dispose of the estate to his own use without incurring the obligation to pay the debts is undoubted, and the courts will not hesitate to strictly apply the law when the facts warrant. In this case it has been made our duty to review the law having application to the personal liability of the heir. There has been enacted article 1100 Civil Code as applying to strangers taking charge of vacant estates and article 2418 making widow in community liable for concealing or making away with community property—the same principle of law governs both of these cases—for the same great purpose of honesty and fair dealing is to be vindicated—; this vindication could not happen if we harshly condemn and made a victim of one who far from enriching himself, has expended his own funds in a pious, though for him, as a relation, a very proper act. In Soubrian vs. Rivollet, 4 Ann. 329, the Supreme Court said—

"the allegations that the defendant has concealed or made away with the effects of the succession, are entirely unsupported by evidence—it is proved, on the other hand, that Rivollet lived separate from his wife, and was, at the time of his death, in a state of absolute destitution. His brother had to pay his funeral expenses, and the person in whose house he died, has against him a claim for rent and attendance she considers lost—This testimony makes it highly probable that the two trunks of which the defendant took charge—; contained nothing but the papers and old clothes which he offered to return. If, as we believe, the succession would not have defrayed the expenses of administration, the defendant was not bound to have it administered".

There is a strong analogy between the case at bar and the one just cited, and the judgment in that rendered should be the one in this.

It is therefore ordered that the judgment appealed from be reversed and set aside and that there be now judgment in favor of defendant rejecting plaintiff's demand with costs in both courts.

Concurring Opinion by Judge Frank McGloin.

In this case, the evidence does not satisfy me that the removal of the effects of the deceased, was the act of the defendant. He himself positively declares, under oath, that it was not, and that he knew nothing of it, until, upon returning from the funeral, he found them upon his premises, and the circumstances connected with the removal, corroborate him.

The property occupied by Mrs. Cavanaugh was rented, and the landlord certainly was the only one interested to order the removal of the things in question, before the funeral was ended, whereby his premises would be cleared of them. The burden was upon plaintiff, to make certain her case, upon this point, as upon all others, and I do not think she has succeeded. Furthermore, although disposed to enforce the laws under consideration, I am not prepared to announce the doctrine,

that defendant, who knew, as did all others who were acquainted with deceased, that she was utterly insolvent, and these things were all she possessed, rendered himself liable, as unconditional heir for all her debts, by simply removing from the premises of another, which they encumbered, and depositing in his stable, to be surrendered to whomsoever should call for the same, with due authority, things which many reputable witnesses declared to have been mere trash, possessing no value whatever, or one so trifling, as to be practically none. I consider the case very similar to the one reported in 4 La. Ann. 328—Soubran vs. Rivollet.

Rehearing refused May 9th, 1881.